UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDGEWATER BEACH APARTMENTS CORP., | ) |
| Plaintiff, | ) ) ) Case No. 08 C 5375 |
| v. | ) ) Judge Joan B. Gottschall |
| FRONTIER INSURANCE COMPANY, IN REHABILITATION, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Edgewater Beach Apartments Corporation ("EBAC"), an Illinois entity, has brought suit against Defendant Frontier Insurance Company ("FIC"), a New York entity, alleging that FIC breached a performance bond and payment bond by refusing to perform on these bonds. Jurisdiction is based on diversity. FIC has moved for a stay pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (colloquially referred to as "*Burford* abstention"), or for the complaint to be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### BACKGROUND[1]

EBAC is a residential cooperative owned and operated by its tenants, whose sole business is the ownership and operation of an apartment building. FIC is an insurance company based in

---

[1] For purposes of this motion, the court accepts all facts pled in the complaint as true, except to the extent that allegations are contradicted by attached exhibits. *See Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (noting in Rule 12(c) context that "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.") (citations omitted). EBAC's amended complaint states that it has attached as "Exhibit C" a New York court order that is referred to herein as establishing a "Rehabilitation Procedure" for FIC, and the amended complaint addresses that process. Am. Compl. ¶ 15. The amended complaint does not contain an Exhibit C. However, the relevant court order is attached to EBAC's response to FIC's motion to stay as Exhibit 3. (Doc. No. 20-4).

New York, who was authorized to enter into insurance contracts within the state of Illinois when the bonds at issue were executed.

EBAC entered into a contract with third party Mid/America Contracting, Inc. ("Mid/America"), to repair the apartment building. To ensure completion of the contracted-for work, EBAC required Mid/America to obtain a performance bond, which was to be payable to EBAC in the event that Mid/America failed to fully perform. A bond was obtained from FIC in 1999. EBAC also required Mid/America to obtain a payment bond to cover expenses that would be due to Mid/America's subcontractors, so that EBAC could avoid mechanics' liens on the property in the event Mid/America failed to pay the subcontractors. A payment bond was obtained from FIC in 1999.

Mid/America breached. On February 14, 2006, EBAC notified FIC of the breach. EBAC attempted to work with FIC to have the claims processed in a timely manner, but was unable to secure performance from FIC, or, for that matter, an explanation as to why FIC would not perform. EBAC completed the work using other entities, but now seeks to be reimbursed for all expenses that resulted from Mid/America's breach, pursuant to both the performance bond and payment bond.[2] EBAC also seeks relief under 215 Ill. Comp. Stat. 5/155, which authorizes fees and statutory penalties against insurance companies who unreasonably delay in settling claims.

In 2001, FIC was placed into rehabilitation via a court order from the Supreme Court of the State of New York (the "Rehabilitation Court"). The court order was sought by the New York Superintendent of Insurance, and named the Superintendent as the Rehabilitator for FIC. The

---

[2] The payment bond was to be in favor of both EBAC and the subcontractors. One of the subcontractors ultimately submitted a claim pursuant to the payment bond, and later transferred this claim to EBAC after EBAC and the subcontractor reached a settlement that obviated a mechanic's lien against the property.

2

Rehabilitation Court purported to enjoin any action against FIC in any other court. EBAC was not and is not a party to that action. Notwithstanding the above, FIC has continued to be involved in litigation in other courts.

The Rehabilitation Court entered a subsequent order on May 10, 2004, which established a procedure for claimants of FIC to follow ("Rehabilitation Procedure"). This procedure provides that claims should be submitted to the Rehabilitator, who will examine each claim and make a recommendation of allowance, disallowance, or modification of the claim. After doing so, the Rehabilitator will send the claimant a "Notice of Determination" ("NOD") letter advising of the Rehabilitator's recommendation. If the claimant wishes to object, she must do so within 60 days in writing. The Rehabilitator will then attempt to resolve the objection with the claimant. Any objections that are not resolved will be referred to a referee appointed by the Rehabilitation Court. The referee will conduct a hearing and make a determination on the original recommendation and objection, after which either the claimant or the Rehabilitator can seek a court-order confirming the referee's report. The Rehabilitation Procedure also permits the Rehabilitator, "in his sole discretion, to settle claims at any time during the adjudication process." The Rehabilitation Procedure does not disclose how any approved determination of payment will actually be paid. Nor does it disclose how the determinations by the Rehabilitator or referee will be reviewed by the Rehabilitation Court. Notwithstanding this Rehabilitation Procedure, FIC has continued to settle claims outside of this stated procedure.

In its motion, FIC points to the Rehabilitation Procedure and insists that this is the only forum in which EBAC should be permitted to pursue its claim, pursuant to *Burford* abstention. FIC separately argues that EBAC's claims are precluded by the performance and payment bonds' contractual statute of limitations, which is two years. FIC finally argues that EBAC's state-law

claim under § 155 must be dismissed because FIC was not the actor who engaged in the allegedly improper conduct—FIC asserts that any such claim is actionable only against the Rehabilitator if it is actionable against anybody.

**ANALYSIS**

**I.     *Burford* Abstention**

The Supreme Court has "often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citations omitted). There is no doubt that this court has jurisdiction over the present action—this action is properly based on diversity under 28 U.S.C. § 1332. Nevertheless, "This [strict] duty [to exercise jurisdiction] is not . . . absolute." *Id.* (citations omitted). As the *Quackenbush* court goes on to explain, there are several narrow exceptions where a federal court may have jurisdiction but nevertheless choose to abstain from exercising that jurisdiction. *Id.* at 716–17. The abstention principle raised by FIC, and discussed in detail in *Quackenbush*, is *Burford* abstention.

*Burford* was a case in equity, involving "a complex state administrative scheme and the need for centralized decisionmaking in the allocation of oil drilling rights." *Int'l College of Surgeons v. City of Chi.*, 153 F.3d 356, 361 (7th Cir. 1998) (hereinafter "*Int'l College*") (examining *Burford* doctrine). In *Burford*, the Court held that a case brought in federal court should have been dismissed[3] because the issue of allocation of oil drilling rights should have been resolved by a state-appointed commission that was designed for this specific purpose. *See id.* The Court emphasized that novel and very specific state-law issues were involved, that the legal question (how to divide

---

[3] The Supreme Court has made clear that in non-equity cases (such as this), a *stay* under *Burford* remains possible, but *dismissal* does not. *Quackenbush*, 517 U.S. at 730.

4

up oil rights to various rigs drilling into the same reserve) was complex, and that the issue was predominantly a local interest specific to Texas, without any broader concern. *Int'l College*, 153 F.3d at 361; *Burford*, 319 U.S. at 331. The Court finally stressed that *de novo* review was available in a "designated state court," and that this review "was 'expeditious and adequate,' whereas review in the relatively unsophisticated federal courts would lead to '[d]elay, misunderstanding of local law, and needless federal conflict with the state policy.'" *Int'l College*, 153 F.3d at 361 (quoting *Burford*, 319 U.S. at 327, 334).

*Burford* abstention is possible in either of two contexts. "First, federal courts should abstain from deciding "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.* at 362 (quoting *Quackenbush*, 517 U.S. at 726–27). Second, courts "should also abstain from the exercise of federal review that 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* FIC argues that the second form of abstention should control this case.[4]

The Seventh Circuit has assumed in at least some circumstances that a state's rehabilitation proceedings in the matter of an insurance company could warrant abstention. *See Property & Cas. Ins. Ltd. v. Central Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 323 (7th Cir. 1991) (hereinafter "*Central Nat'l*") (finding *Burford* abstention inappropriate because nature of Nebraska's rehabilitation proceeding was not clear from the record); *Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 425–27 (7th Cir. 1990) (hereinafter "*Hartford*") (finding *Burford* abstention appropriate where Illinois had implemented a state-court rehabilitation proceeding). Neither of these cases controls

---

[4] The first form is clearly inapplicable—the bonds at issue do *not* involve complicated law, and are in any event controlled by *Illinois* law, making a New York forum a peculiar choice.

the outcome here, however, in significant part because "*Burford* abstention requires a very careful and fact-specific inquiry." *Central Nat'l*, 936 F.2d at 326 n.13.

*Central National* makes clear that there are two "prerequisites" to *Burford* abstention: "[f]irst, and most obvious, the state must offer some forum in which claims may be litigated . . . . Second, that forum must be special—it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Id.* at 323. The requirements of these prerequisites have been explained in more detail in *International College*, 153 F.3d 356. *International College* involved examination of Chicago's Landmarks Ordinance, which among other things, permits the Landmarks Commission to grant or deny demolition permits of certain buildings within the City of Chicago. *Id.* at 359, 364–65. The Commission's decision can be appealed to the Circuit Court of Cook County, and the Commission's determination is reviewed pursuant to the Illinois Administrative Review Act ("Ill.-ARA"), applying a level of scrutiny similar to the federal Administrative Procedures Act's arbitrary-and-capricious standard. *Id.* at 364–65. The question presented was whether abstention would be appropriate under *Burford*.

The court recognized that a state forum to litigate was provided: the Circuit Court of Cook County. *Id.* at 364. However, the court found that the second prerequisite—a "special relationship of technical oversight or concentrated review"—was lacking. First, the court noted that the City Council had not specified the Circuit Court of Cook County when adopting the Landmark Ordinance, as had happened in the *Burford* case where the legislature specifically provided that one district court would review all the claims. Rather, the Circuit Court had jurisdiction pursuant to existing state law that provides for judicial review of all administrative decisions, in the form of the Ill.-ARA. *Id.* at 364. Second, the court stressed that under the Ill.-ARA, only a very minimal review of the Commission's determination would occur. *Id.* at 364–65 (describing "against the manifest

6

weight of the evidence" standard). In contrast, *Burford* involved a state court that would engage in *de novo* review. *Id.* Such a "deferential standard[]" of review distinguished this example from that considered in *Burford*, for in *Burford* the state court was a "'working partner[]' with the administrative agency." *Id.* at 364. For both these reasons, the court concluded that the Circuit Court did not have any particularly specialized expertise, and that abstention would be inappropriate. *Id.* at 365.

This court is aware that at least one court in this district has granted FIC a stay in a similar proceeding. In *Mountain Funding, Inc. v. FIC*, 329 F. Supp. 2d 994 (N.D. Ill. 2004), Judge Denlow stayed the proceedings, concluding that the concerns raised by the Seventh Circuit in *Central National* were cured by the Rehabilitation Procedure:

> The New York rehabilitation proceedings clearly are in a special relationship of concentrated review of Plaintiff's surety bond claim, as their purpose is to facilitate judicial review of all of Frontier's claimants, to expedite the resolution of such claims, to prevent the unnecessary expenditure of assets, and to provide a fair, equitable and unified procedure for all claimants of Frontier.

*Id.* at 999. In contrast, Judge Shadur denied FIC's request for a stay in *Love v. FIC*, No. 07 C 5714 (N.D. Ill. Dec. 19, 2007). Judge Shadur concluded that abstention was inappropriate since any final decision rendered in the case before him would still have to be submitted to the Rehabilitator for payment, thus minimizing the risk that the plaintiff in that case was attempting to impair the uniform application of the Rehabilitator. In a more recent unpublished decision, the Fourth Circuit affirmed an approach similar to that of Judge Shadur's. In *Spencer v. Frontier Ins. Co.*, 290 Fed. App'x 571 (4th Cir. 2008) (per curiam) (unpublished), the Fourth Circuit noted not only the long delay in the existing Rehabilitation Procedure involving FIC, but also the lack of any certainty of judicial review. It reached the same conclusion as Judge Shadur: that any judgment entered on behalf of the plaintiff

7

would not upset New York's interest in uniformity, for the judgment would have to be enforced by a New York court. *Id.* at 574–75.

This court's review of the Rehabilitation Procedure leads it to the conclusion that the forum is not sufficiently specialized to warrant abstention, just as in *International College*. The Rehabilitation Procedure does not indicate what level of review the Rehabilitation Court will exercise over the Rehabilitator's and referee's decisions, and there is no indication that it will be a *de novo* review as in *Burford*. *See Int'l College*, 153 F.3d at 364–65. To the contrary, there will sometimes be no review at all—the Rehabilitation Procedure specifically provides that the Rehabilitator may settle any claims it chooses to settle in its "sole discretion." This unilateral mechanism shows that the supervising court is *not* in a "working relationship" in the manner envisioned in *Burford*, and as required under *International College*. *Id.* at 364–65.

As the Supreme Court has stressed, federal district courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. *Quackenbush*, 517 U.S. at 716. FIC has failed to show that the requirements of *Burford* are satisfied here.[5] FIC's motion to stay is denied.

**II    Section 155**

Section 155 permits the court to assess the cost of attorney fees and a statutory penalty

> [i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable . . . .

215 Ill. Comp. Stat. 5/155(1). EBAC alleges that FIC acted unreasonably and vexatiously in failing to settle EBAC's claims. Am. Compl. ¶ 20. EBAC further alleges that FIC is settling other claims

---

[5] Although the Rehabilitation Court purported to enter an order enjoining other suits against FIC, the legal consequence that order should have on this matter has not been raised in the parties' papers, and will not be considered herein.

8

without resorting to the Rehabilitation Court. Am. Compl. ¶ 13. EBAC seeks a statutory penalty of $25,000 against FIC, and otherwise seeks attorneys' fees and costs.

FIC argues that this claim fails because the issues raised in EBAC's complaint all occurred subsequent to FIC's having been placed into rehabilitation, suggesting that at that point it became the responsibility of the Rehabilitator to settle and resolve any disputes. At this stage of the litigation, FIC's argument fails. First, EBAC has pled that FIC is settling claims without resorting to the Rehabilitation Court or the Rehabilitator. Second, the Rehabilitation Procedure states that "the Rehabilitator [is enabled] to dispose of surety claims." Rehab. Proc. at ¶ 2 (Doc. No. 20-4). It does not state that FIC is prohibited from doing the same. ECAB's § 155 claim can go forward.

## III. Breach of Contract Claims

FIC also points to the bonds themselves, which include a contractual two-year statute of limitations provision. EBAC's complaint alleges that it notified FIC of Mid/America's breach on February 14, 2006.[6] This suit was filed on September 19, 2008, more than two years after the breach. FIC argues that this suit is now barred by the terms of the contract.

"A lawsuit filed after a contractual time limitation has expired is barred unless an insurer has waived the requirement." *Mathis v. Lumbermen's Mut. Cas. Ins. Co.*, 822 N.E.2d 543, 547 (Ill. App. Ct. 2004). The date of breach, and the contractual limitation, were both asserted in EBAC's pleadings, and therefore it is EBAC's obligation to plead that this contractual limitation does not apply, either by alleging waiver—"the voluntary, intentional relinquishment of a known right"—or estoppel—"conduct that misleads the [plaintiff] to his detriment." *Id.* (citations omitted).

---

[6] The parties do not discuss whether the date of notification, or the date of actual breach, is the operative date for limitations purposes. The court need not resolve this issue at this time.

EBAC has not so pled. EBAC has alleged that FIC has been dilatory in processing its application, but EBAC has not pled either that FIC waived the two-year contractual limitation, or that any conduct by FIC has misled EBAC to its detriment.

When considering a Rule 12(b)(6) motion, the court is limited to what is found within the pleadings. For this reason, EBAC's complaint must be dismissed. However, the court declines to dismiss the entire action with prejudice, as FIC requests. Rule 15 of the Federal Rules of Civil Procedure instructs that courts "should freely give leave [to amend] when justice so requires." The court will grant EBAC leave to file a second amended complaint within twenty-one days to cure this defect, if it can do so.

### CONCLUSION

FIC's motion for a stay pursuant to *Burford* is denied. EBAC's amended complaint is dismissed with leave to re-file within twenty-one days. If EBAC does not do so, the court will dismiss the case with prejudice.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 19, 2009